IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAMES E. WHITTINGTON, JR., *et al.*, | ) | CASE NO.: 2:15-cv-11424 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOSEPH R. GOODWIN |
| | ) | |
| v. | ) | |
| | ) | |
| VOSSLOH TRACK MATERIAL, INC., *et al.*, | ) | **MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND REQUEST FOR FEES** |
| | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

Even if the allegations in the Complaint of Plaintiffs James E. Whittington, Jr. ("Whittington"), Cheryl Whittington (the "Wife"), and James E. Whittington, III (the "Son") (collectively, "Plaintiffs") are taken as true, which they are not, Plaintiffs' causes of action under USERRA in Counts I, II, and III fail to state claims upon which relief can be granted, and so should be dismissed. Moreover, to the extent that Plaintiffs are attempting to state claims against Defendants Michael A. Joffred and Jason Klotzer in Counts IV through VIII, those claims also fail as a matter of law, and so Mr. Joffred and Mr. Klotzer should be dismissed entirely from this lawsuit.

## II. STATEMENT OF FACTUAL ALLEGATIONS

Plaintiffs are former employees of Defendant Vossloh Track Material, Inc. ("VTM"). They seek damages in this lawsuit allegedly arising out of their separations from employment with VTM. In addition to suing VTM, Plaintiffs have also named as Defendants Michael A. Joffred, VTM's

Chief Operating Officer, and Jason Klotzer, VTM's former Manager of Human Resources and current Director of Human Resources (together with VTM, "Defendants").

Whittington voluntarily resigned from his position with VTM on June 16, 2014. (D.N. 1, ¶ 53, Exhibit 2.) On July 25, 2014, in exchange for $50,000.00, Whittington entered into a Separation Agreement with VTM that contained certain restrictive covenants and a general release.[1] (*Id.* at ¶ 60, Exhibit 4.[2]) As provided in the Separation Agreement, Whittington released his right to pursue "any and all claims . . . , which [Whittington] may have against [VTM], [and] its . . . employees." (*Id.* at Exhibit 4.) "Claims" was defined as including "any and all actions, controversies, demands, causes of action, suits, rights, and/or claims whatsoever . . ., arising, directly or indirectly, out of [Whittington's] employment with [VTM] and any . . . statutes . . of . . . the United States." (*Id.*) In the event Whittington "institute[d] or [was] a party to any action in violation of the terms of this Agreement," he agreed to "reimburse [VTM] or its . . . employees" and further agreed to "be liable for, all legal fees and expenses incurred in defending [his] claims and obtaining the dismissal thereof." (*Id.*)

As further provided in the Separation Agreement, VTM advised Whittington to consult with an attorney, it afforded him 21 days in which to do so, and it allowed him the option of revoking the Separation Agreement within 7 days after signing it. (D.N. 1, Exhibit 4.) Furthermore, Whittington expressly represented in the Separation Agreement that he signed it "freely and voluntarily." (*Id.*) In spite of these provisions, Whittington nonetheless alleges that VTM coerced him into signing the Separation Agreement upon threats that VTM would terminate the employment of his Wife and Son. (*Id.* at ¶¶ 59-60, 96.)

---

[1] Whittington has never returned the $50,000.00 he received as consideration for the Separation Agreement.
[2] Although Whittington attached a copy of the Separation Agreement executed by VTM alone, Whittington alleges that he signed it. (D.N., ¶¶ 12, 60.) A fully executed copy of the Separation Agreement is attached to the Counterclaim of VTM, filed contemporaneously herewith, as Exhibit E.

On July 30, 2014, the Wife and Son both executed Non-Competition, Non-Disclosure, Non-Interference, and Non-Solicitation Agreements with VTM. (D.N. 1, ¶ 62, Exhibits 5, 6.) The employment of both the Wife and Son with VTM was terminated approximately six months later, on or about January 28, 2015. (*Id.* at ¶ 68.)

Plaintiffs initiated this lawsuit on July 22, 2015. Along with claims for violations of the Consolidated Omnibus and Reconciliation Act, 29 U.S.C. § 1161, *et seq.* ("COBRA") (*see* D.N. 1, ¶¶ 85-94 (Counts IV and V)), and claims for declaratory judgment (*see id.* at ¶¶ 96-109 (Counts VI, VII, and VIII)), each Plaintiff asserts a claim for "Discrimination Based on Actions Taken to Aid Enforcement of Protections" (essentially, retaliation) under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311(b) ("USERRA"). (D.N. 1, ¶¶ 73-84 (Counts I, II, and III).)[3]

The following constitute *all* of the alleged actions taken by the Wife and Son that relate in any way to USERRA or the rights provided in that law:

- "All Plaintiffs provided assistance, including, but not limited to assistance as fact witnesses, to Chief Master Sargent James H. Landers, [the p]laintiff in an action seeking to enforce his rights under USERRA, filed with this court on July 22, 2014, styled *Landers v. Vossloh Track Material, Inc., et al.*, Case No. 2:14-cv-23920." (D.N. ¶ 5.)

- "During the negotiations leading up to the settlement agreement, Plaintiffs continued to provide assistance to Mr. Landers and his counsel that was prejudicial to [VTM]. [Defendants] knew Plaintiffs were assisting Mr. Landers in Civil Action Case No. 2:14-cv-23920." (*Id.* at ¶ 67.)

The Complaint does not allege any discrimination against the Wife and Son due to their current or past service, if any, in any branch of the U.S. armed services. (*See generally id.*) Thus, on the basis

---

[3] Plaintiffs should not have asserted their declaratory judgment claims in this Court. Both contracts for which the Wife and Son seek a declaration expressly provide that they are governed by the laws of the State of Ohio and that "[j]urisdiction and venue shall lie in the federal and state courts of the State of Ohio." (D.N. 1, ¶¶ 62, 100-109, Exhibits 5, 6.) Accordingly, Counts VII and VIII should have been brought in an Ohio court. Similarly, the Separation Agreement for which Whittington seeks a declaration expressly provides that it shall be construed by the laws of Pennsylvania and that "[j]urisdiction and venue shall lie in the federal and state courts of the Commonwealth of Pennsylvania." (D.N. 1, ¶¶ 60, 96-99, Exhibit 4.) As such, Count VI should have been asserted in a Pennsylvania court.

{00169260-2}    2

of these meager allegations, the Wife and Son seek the protections afforded to veterans and current service members under USERRA. For the following reasons, Plaintiffs' USERRA claims fail as a matter of law.

Additionally, the Complaint is unclear as to whether Plaintiffs are asserting their COBRA claims (Counts IV and V) and their declaratory judgment claims (Counts VI, VII, and VIII) against the individual Defendants, Mr. Joffred and Mr. Klotzer. However, to the extent Plaintiffs intend to seek relief under these claims from them, Mr. Joffred and Mr. Klotzer cannot be held individually liable as a matter of law. Accordingly, Mr. Joffred and Mr. Klotzer should be dismissed entirely from this lawsuit.[4]

### III. LAW AND ARGUMENT

#### A. Standard of Review.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a lawsuit may be dismissed for "failure to state a claim upon which relief can be granted." To avoid dismissal under Rule 12(b)(6), a party cannot rely upon mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but instead must provide sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* (2007), 550 U.S. 544, 555, 570. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555. "The mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Under this standard, the

---

[4] In the Prayer for Relief of Count IV (a COBRA claim), the Wife "prays for judgment against Defendant VTM, Inc." but then also requests an "order, requiring Defendants to pay medical expenses . . ." and an "order, requiring Defendants to pay the costs of the suit . . . ." (D.N. 1, ¶ 89.) In the Prayer for Relief of Count V (a COBRA claim), the Son "prays for judgment against Defendants . . . ." (*Id.* at ¶ 94.) In Counts VI, VII, and VIII (the declaratory judgment claims), Plaintiffs allege actions by "Defendants" and request that "Defendants shall pay the costs of this suit." (*Id.* at ¶¶ 95-109.)

{00169260-2 }  3

Plaintiffs' USERRA claims and their remaining claims against Mr. Joffred and Mr. Klotzer should be dismissed.

**B.    Whittington Released His Right to Pursue a USERRA Claim, and Defendants Are Entitled to Their Legal Fees.**

Whittington executed a Separation Agreement following his resignation from VTM, which included a release of any and all claims against Defendants. That release bars his USERRA claim. Furthermore, as a matter of law, Whittington cannot void the Separation Agreement, and is therefore bound by the promises contained therein. Accordingly, Whittington's USERRA claim should be dismissed, and Defendants should be awarded their attorney's fees and costs incurred in pursuit of this relief.

1.    The Separation Agreement bars Whittington's USERRA claim.

Whittington unequivocally released *any and all claims* against Defendants in the Separation Agreement he entered into on July 25, 2014, approximately one month after he resigned from his employment with VTM. (D.N. 1, ¶¶ 53, 60, Exhibits 2, 4.) Any possible adverse employment action taken against Whittington on the basis of any USERRA-related conduct necessarily predated, and is therefore covered by, the Separation Agreement. Moreover, Whittington received $50,000.00 in consideration for executing the agreement. (*Id.* at Exhibit 4.) Additionally, VTM advised Plaintiff to consult with an attorney before executing the agreement, it afforded him 21 days in which to do so, and it gave him the option of revoking the agreement within 7 days after signing it. (*Id.*) As such, the release bars Whittington's USERRA claim.

2.    Whittington's claim of duress does not void the Separation Agreement.

In an apparent attempt to avoid the necessary ramifications of having executed the Separation Agreement, Whittington alleges that the Separation Agreement is void because VTM supposedly

coerced him into signing it by threatening to terminate the employment of his Wife and Son. (D.N. 1, ¶ 96.) Such alleged coercion, however, is insufficient to invalidate the agreement.

First, Pennsylvania law is to be applied to construe the Separation Agreement, including Whittington's argument to void it, as the Separation Agreement expressly provides, "All conflicts of law shall be resolved in favor of applying the law of the Commonwealth of Pennsylvania. This Agreement shall be construed according to the Laws of the Commonwealth of Pennsylvania." (D.N. 1, Exhibit 4.) Additionally, VTM's principal place of business is in Pennsylvania, and Mr. Joffred and Mr. Klotzer reside in Pennsylvania. (*Id.* at ¶¶ 35-37.) Furthermore, Mr. Klotzer, who was located in Pennsylvania, contacted Whittington to discuss entering into the Separation Agreement. (*Id.* at ¶ 59.)

Pursuant to West Virginia's choice of law analysis for contract claims, Pennsylvania law applies under the following circumstances: where the parties to a contract include a choice of law provision in their agreement, that choice should be applied as long as the law of the chosen state does not offend the public policy of West Virginia and as long as the chosen state has some relationship to the parties. *See Joy v. Chessie Employees Fed. Credit Union*, 411 S.E.2d 261, 265 (W.Va. 1991); *see*, e.g., *Harrison v. PNC Bank*, No. 3:13-19944, 2015 U.S. Dist. LEXIS 61333, at *3, 9 (S.D.W.V. May 8, 2015) (upholding the parties' contractual choice of law provision).

Pennsylvania has a sufficient connection to the parties, given Defendants' location and residence in that state. *See*, e.g., *Melton v. Precision Laser & Instrument, Inc.*, No. 2:12-cv-1697, 2013 U.S. Dist. LEXIS at *9–11 (S.D.W.V. Jan. 18, 2013 (upholding the parties' contractual choice of law provision of Pennsylvania law where a sufficient relationship to Pennsylvania existed given the fact that defendant was headquartered in that state and a representative of the defendant working in that state had contacted the plaintiff about the contract). Moreover, releases, such as the one

executed here, do not offend the public policy of West Virginia. *See Spradling v. Blackburn*, 919 F. Supp. 969, 975 (S.D.W.V. 1996) (holding that a "release of claims . . is not contrary to West Virginia public policy," and upholding the validity of the former employees' releases). Accordingly, Pennsylvania law applies to any analysis of the Separation Agreement.

Under Pennsylvania law, the enforceability of a release is governed by ordinary contract principles. *See Pennsbury Village Assoc., LLC v. McIntyre*, 11 A.3d 906, 914 (Pa. 2011). Otherwise, a release could be "nullified or circumvented . . . whenever one of the parties has a change of mind;" "no matter how clear and pertinent and all-inclusive" it is, a release will "not be set aside absent a clear showing of fraud, duress, or mutual mistake." *Id.* at 914–15. Pennsylvania defines duress as the "degree of restraint or danger, either actually inflicted or threatened or impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Degenhardt v. Dillon Co.*, 669 A.2d 946, 950 (Pa. 1996). Importantly, absent threats of actual bodily harm, "where a party . . . has had the *opportunity* to consult with legal counsel before entering into a contract, that same party cannot later invalidate the contract by claiming economic duress." *Id.*

For example, in *Cuchara v. Gai-Tronics Corp.*, 129 F. App'x 728 (3d Cir. 2005), an employee asserted various federal and state law claims against his former employer. The employee, however, had signed an agreement releasing all claims against the former employer in exchange for four weeks of continued salary. In the agreement, the former employer had advised the employee to seek the advice of an attorney before signing. Since he had been provided with the opportunity to consult with counsel prior to execution, the former employee's claim of duress did not void the release. *See also*, e.g., *Grupp v. Bank of N.Y. Mellon Corp.*, No. 2:14cv240, 2014 U.S. Dist. LEXIS 167904, at *14–16 (W.D. Pa. Dec. 4, 2014) (refusing to invalidate a release on grounds of economic

duress and dismissing claims of former employee who executed the release, which expressly advised him to consult an attorney).

In this case, Whittington was afforded the opportunity to consult with an attorney prior to executing the Separation Agreement. (D.N. 1, Exhibit 4.) Moreover, Whittington has not alleged any threats of physical harm. (*See generally id.*) Whittington cannot now attempt to invalidate the release on the grounds of economic duress. *See Cuchara*, 129 F. App'x at 730; *Grupp*, 2014 U.S. Dist. LEXIS 167904, at *14–16. Accordingly, the release he executed, in exchange for $50,000.00, remains valid and precludes his present pursuit of a claim under USERRA.[5]

        3.        <u>Defendants are entitled to the attorney's fees and costs incurred.</u>

The Separation Agreement provides that, in the event Whittington "institute[d] or [was] a party to any action in violation of the terms of this Agreement," Whittington must be held "liable for, all legal fees and expenses incurred in defending [Whittington's] claims and obtaining the dismissal thereof." (D.N. 1, Exhibit 4.) Whittington initiated this lawsuit against Defendants in direct violation of the terms of the Separation Agreement. Accordingly, Defendants are entitled to the attorney's fees and costs associated with obtaining dismissal of the released claims, and therefore request an award of those fees and costs.

    **C.**    **The Wife and Son Have Not Engaged in Conduct Protected by USERRA.**

Although designed primarily to benefit veterans and current service members, USERRA also protects civilian employees who suffer an adverse action in retaliation for engaging in conduct

---

[5] Even if his claim were not barred by the Separation Agreement, Whittington's USERRA claim would nonetheless fail as a matter of law because he has not engaged in protected conduct (*see infra* Section II(C)), and he has not alleged the necessary elements of constructive discharge. (*See* D.N. 1, ¶¶ 5, 7, 53-54, 67, Exhibit 2.) In this regard, Whittington's working conditions were not objectively intolerable. *See Lisdahl v. Mayo Found.*, 633 F.3d 712, 718 (8th Cir. 2011). Whittington also has not alleged that Defendants intended to force him to quit. *See id.* Moreover, he did not give Defendants "a reasonable opportunity to correct the intolerable conditions before" quitting. *See id.* at 719. As such, dismissal of Whittington's USERRA claim would be appropriate even without the release in his Separation Agreement.

protected by USERRA. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011). For civilian employees, USERRA provides protection for three types of conduct:[6]

> (1) having "taken an action to enforce a protection afforded any person under" USERRA (38 U.S.C. § 4311(b)(1));
>
> (2) having "testified or otherwise made a statement in or in connection with any proceeding under" USERRA (*id.* at (b)(2)); or
>
> (3) having "assisted or otherwise participated in an investigation under" USERRA (*id.* at (b)(3)).

Accordingly, to state a *prima facie* case of retaliation, a civilian plaintiff first must establish that he or she has engaged in one of the three types of protected conduct identified in § 4311(b). *Grosjean v. FirstEnergy*, 481 F. Supp. 2d 878, 884 (N.D. Ohio 2007).

### 1. The Wife and Son cannot show protected conduct under § 4311(b)(3).

Under § 4311(b)(3), an individual has engaged in protected conduct where he or she has "assisted or otherwise participated in an investigation under this chapter." The "investigation under this chapter" refers to an administrative investigation the Secretary of Labor may institute under certain circumstances. *See* 38 U.S.C. § 4303(11) (defining Secretary), § 4321, *et seq.* (providing for administrative investigations). No investigation under USERRA occurred in this case. (*See generally* D.N. 1.) Accordingly, the Wife and Son cannot claim protection under § 4311(b)(3).

### 2. The Wife and Son cannot show protected conduct under § 4311(b)(2).

Under § 4311(b)(2), an individual has engaged in protected conduct where he or she has "testified or otherwise made a statement in or in connection with any proceeding under this chapter." *See*, e.g., *Bagnall v. City of Sunrise*, No. 10-61299-CIV-MARTINEZ-MCALILEY, 2011 U.S. Dist. LEXIS 94565, at *41–42 (S.D. Fla. Aug. 24, 2011) (finding wife to have been engaged in protected activity when she testified at an administrative hearing regarding her husband's claims of USERRA

---

[6] Although there is a fourth option, that provision is available only to covered veterans and service members. *See* 38 U.S.C. § 4311(b)(4).

discrimination). The Wife and Son neither testified nor made a statement in Mr. Landers' lawsuit. (*See generally* D.N. 1.) Accordingly, they cannot claim protection under § 4311(b)(2).

### 3. The Wife and Son cannot show protected conduct under § 4311(b)(1).

As subsections (b)(2) and (b)(3) are unavailable to the Wife and Son, their only potential avenue for satisfying the protected conduct element of a *prima facie* case under § 4311 of USERRA is subsection (b)(1): having "taken an action to enforce a protection afforded any person under" USERRA. In fact, the Wife and Son essentially concede that any potential cause of action must proceed under this subsection.[7]

Although not defined in the statute, "enforce" means "[t]o give force or effect to (a law, etc.); to compel obedience to." *Greenbaum v. Bailey*, 781 F.3d 1240, 1244 (10th Cir. 2015) (*quoting* Black's Law Dictionary 608 (9th ed. 2009)). Accordingly, to have taken an action to "enforce," a plaintiff must have forced, effected, or compelled the provision of a benefit provided for in USERRA. Mere passive assistance is unprotected.

For example, in *Vaughn v. Titan International Inc.*, 72 F. Supp. 3d 809, 815 (N.D. Ohio 2014), the plaintiff, a human resources manager, learned of another employee's difficulties in rearranging his schedule to participate in a military drill. The plaintiff contacted the employee's military representative regarding the issue as well as the employee's manager. She also reached out to a corporate paralegal, requesting direction on the military leave issue. Thereafter, she performed training on USERRA for the facility's managers. The court assumed, without deciding, that the plaintiff had "enforced" protections under USERRA. *Id.* at 814–15 (granting summary judgment on USERRA claim for lack of causation).

---

[7] In Paragraph 78, the Wife alleges, "Having taken action to aid enforcement of USERRA protections against [VTM], [the Wife] was protected against employer retaliation." The Son makes an identical allegation. (*See* D.N., ¶ 82.) Moreover, the Wife and Son's USERRA claims (Counts II and III) are styled, "Discrimination Based on Actions Taken to Aid Enforcement of Protections Afforded Under USERRA." (*See* D.N. 1.)

{00169260-2 }  9

Similarly, in *Cook v. CTC Comm. Corp.*, No. 06-cv-58-JD, 2007 U.S. Dist. LEXIS 96979 (D.N.H. Oct. 30, 2007), the plaintiff, a human resources manager, argued with a manager about whether an employee, who was out on military leave, could be fired. She further complained a couple of times to the defendant's CEO about her concerns of discriminatory treatment of employees. The court found that the plaintiff had engaged in protected conduct under USERRA. *Id.* at *26–27.

The Wife and Son herein cannot establish a *prima facie* case of retaliation, as neither has taken any action to enforce a USERRA protection. At most, the Wife and Son allege that they "provided assistance, including, but not limited to assistance as fact witnesses" to Mr. Landers in his USERRA lawsuit. (D.N. I, ¶¶ 5, 67.) This passive assistance falls short of the sort that can be considered enforcement. *See Greenbaum*, 781 F.3d at 1244 (defining "enforce" as "[t]o give force or effect to (a law, etc.); to compel obedience to"). Unlike the plaintiffs in *Vaugh* and *Cook* (two cases addressing the application of subsection (b)(1) to civilians), the Wife and Son never complained to anyone at VTM about Mr. Landers' treatment, never pursued the issue with anyone else at VTM, and never performed any training in response to perceived discriminatory treatment. Rather, the Wife and Son have not alleged any activity even coming close to forcing, effecting, or compelling the provision of Mr. Landers' rights under USERRA. As such, they cannot demonstrate a *prima facie* case.

Furthermore, there is no reason to stretch the protections of USERRA beyond what they can logically support to help the Wife and Son. Neither the Wife nor the Son claim protection for any activities arising out of their own service in any branch of the United States armed forces. *See* 38 U.S.C. § 4301 (identifying the purposes of USERRA, none of which pertained to civilian employees); *Hill v. Michelin N. Am.*, 252 F.3d 307, 312–13 (4th Cir. 2001) ("Because USERRA was

enacted to protect the rights of veterans and members of the uniformed services, it must be broadly construed *in favor of its military beneficiaries*.") (emphasis added); *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) ("USERRA is to be liberally construed in favor of those who served their country."). Moreover, neither the Wife nor the Son did anything proactive, risky, or brave to support Mr. Landers. Without some act of enforcement, the Wife and Son cannot state a retaliation claim under USERRA, as their passivity does not further the goals of USERRA. *See* 38 U.S.C. § 4301. Accordingly, the USERRA claim as to the Wife and Son should be dismissed.

> **D.  Mr. Joffred and Mr. Klotzer Cannot Be Held Individually Liable for Plaintiffs' COBRA Claims and Declaratory Judgment Claims.**

To the extent Plaintiffs intend to pursue relief from Mr. Joffred and Mr. Klotzer for their COBRA claims and declaratory judgment claims, such attempt must fail, as Mr. Joffred and Mr. Klotzer cannot be held individually liable for those claims.

First, Mr. Joffred and Mr. Klotzer cannot be held personally liable for alleged violations of COBRA. *See McDowell v. Krawchison*, 125 F.3d 954, 961–62 (6th Cir. 1997) (explaining that although individuals may meet the ERISA definition of employer, Congress did not intend to impose individual liability for COBRA violations); *Rockney v. Blohorn*, 877 F.2d 637, 640 (8th Cir. 1989) (holding that individuals cannot be held liable for violations of ERISA, absent facts sufficient to pierce the corporate veil); *Int'l Brotherhood of Painters & Allied Trades Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1548 (D.C. Cir. 1988) (holding that although individuals may meet the ERISA definition of employer, imposition of individual liability was inappropriate because "[s]uch an expansive reading would mean that every employee . . . who discharges some responsibility in regard to a corporation's employee benefit plan would be swept within the definition and thereby . . . subject to liability" under ERISA); *Solomon v. Klein*, 770 F.2d 352, 354 (3d Cir. 1985) (holding that

individuals cannot be held liable for violations of ERISA). As such, the COBRA claims cannot proceed against Mr. Joffred and Mr. Klotzer.

Second, Plaintiffs' declaratory judgment actions cannot stand against Mr. Joffred and Mr. Klotzer. In those claims (Counts VI, VII, and VIII), each Plaintiff seeks a declaration that an agreement is void. However, Mr. Joffred and Mr. Klotzer are not parties to those contracts. (*See* D.N. 1, Exhibits 4, 5, 6.) No allegations suggest that either signed in a capacity other than as a representative of VTM. (*See generally id.*) As such, Plaintiffs cannot bring their declaratory judgment claims against Mr. Joffred and Mr. Klotzer as a matter of law.

Accordingly, Mr. Joffred and Mr. Klotzer should be dismissed entirely from this lawsuit.

## IV. **CONCLUSION**

Whittington cannot pursue a USERRA claim, as he released any and all claims against Defendants in the Separation Agreement, for which he received $50,000.00, he did not engage in protected conduct, and he was not constructively discharged. As provided for in the Separation Agreement, Defendants request an award of fees and costs incurred in obtaining the dismissal of Whittington's USERRA claim. Additionally, the Wife and Son also have not alleged conduct protected by USERRA, and their retaliation claims therefore fail as a matter of law. Moreover, to the extent Plaintiffs seek relief from Mr. Joffred and Mr. Klotzer for their COBRA claims and for their claims for declaratory judgment, such relief is not possible, as Mr. Joffred and Mr. Klotzer cannot be held individually liable.

Accordingly, and pursuant to Rule 12(B)(6), Defendants respectfully request that the Court dismiss Counts I, II, and III of the Complaint, dismiss Mr. Joffred and Mr. Klotzer from this lawsuit entirely, and award Defendants the fees and costs incurred in obtaining the dismissal of Count I.

Respectfully submitted,

/s/ *Joel R. Hlavaty    11/11/15*
*Pro Hac Vice Application Pending*
T. Merritt Bumpass, Jr. (Ohio Bar #0015189)
Joel R. Hlavaty (Ohio Bar #0027005)
**FRANTZ WARD LLP**
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660
(216) 515-1650 (fax)
mbumpass@frantzward.com
jhlavaty@frantzward.com

*/s/ Gene W. Bailey    11/11/15*
Gene W. Bailey, Esq. (WVSB #203)
H. Jerome Sparks, Esq. (WVSB #9256)
**HENDRICKSON & LONG, PLLC**
214 Capitol Street
Charleston, WV 25301
(304) 346-5500
(304) 346-5515 (fax)
gbailey@handl.com
jsparks@handl.com


*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JAMES E. WHITTINGTON, JR., *et al.*, | ) | Case No.: 2:15-cv-11424 |
| | ) | |
| *Plaintiffs*, | ) | JUDGE JOSEPH R. GOODWIN |
| | ) | |
| vs. | ) | |
| | ) | |
| VOSSLOH TRACK MATERIAL, INC., | ) | |
| *et al.*, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| *Defendants*. | ) | |
| | ) | |

      The undersigned counsel for the Defendants hereby certifies that on the 11th day of November, 2015, the foregoing "**MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND REQUEST FOR FEES**" was electronically served upon The Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Ray M. Shepard, Esq. (WVSB#7398)
**The Shephard Law Firm, llc**
l406B Crain Highway S., Suite 102
Glen Bumie, Maryland 21061
Phone: (443)354-3651
Fax: (443) 773-1922
rshepard.@shepardlf.com

*Counsel for Plaintiffs*

                                                */s/ Gene W. Bailey      11/11/15*
                                                Gene W. Bailey, Esq. (WVSB #203)
                                                H. Jerome Sparks, Esq. (WVSB #9256)
                                                **HENDRICKSON & LONG, PLLC**
                                                214 Capitol Street
                                                Charleston, WV 25301
                                                (304) 346-5500
                                                (304) 346-5515 (fax)
                                                gbailey@handl.com
                                                jsparks@handl.com

                                                *Counsel for Defendants*