IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES E. WHITTINGTON, JR., et al.,

      Plaintiffs,

v.                                                                          CIVIL ACTION NO.   2:15-cv-11424

VOSSLOH TRACK MATERIAL, INC., et al.,

      Defendants.


MEMORANDUM OPINION & ORDER

Pending before the court is the defendants' Partial Motion to Dismiss and Request for Fees [ECF No. 9] ("Motion to Dismiss"). The plaintiffs filed their Response [ECF No. 17], and the defendants filed a Reply [ECF No. 22]. The Motion is now ripe for consideration, and for the reasons stated herein, the court **GRANTS in part** and **DENIES in part** the Motion.

I.   Background

The plaintiffs filed their Complaint [ECF No. 1] on July 22, 2015, alleging that their employer violated certain provisions of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Consolidated Omnibus Reconciliation Act ("COBRA"). The plaintiffs further seek declaratory judgments voiding various agreements entered into between themselves and the defendant, Vossloh Track Material, Inc. ("Vossloh").

James E. Whittington Jr. is a resident of Hurricane, West Virginia. Compl. ¶ 32. Mr. Whittington is married to Cheryl Whittington and is the father of James E. Whittington, III ("James III"). *Id.* All three plaintiffs worked for Vossloh at its facility in Saint Albans, West Virginia. *Id.* ¶¶ 32–34. Vossloh is a Delaware corporation registered to conduct business in West Virginia, and it maintains its principal office in Reading, Pennsylvania. *Id.* ¶ 35. Vossloh's mining division is located at its Saint Albans location. *Id.* Michael Joffred is the chief operating officer for Vossloh, and the plaintiffs aver he is a resident of Pennsylvania. *Id.* ¶ 36. Jason Klotzer is the Human Resources Manager for Vossloh, and the plaintiffs likewise aver he is a resident of Pennsylvania. *Id.* ¶ 37.

According to the Complaint, Mr. Whittington was employed as vice president of Vossloh's mining division. Compl. ¶ 42. As Mr. Whittington was nearing his retirement, Vossloh supervisors requested that Mr. Whittington make a recommendation regarding a suitable replacement. *Id.* The Complaint alleges that around January 2014, Mr. Whittington contacted James H. Landers Jr. and invited Landers to apply for the position. *Id.* ¶ 43. Landers provided Mr. Whittington with his résumé, which described Lander's training and significant military experience. *Id.* After meeting with Mr. Whittington and Joffred, Landers was advised that he was well-qualified for the position and that he should prepare to travel to Charlotte, North Carolina, to interview with Vossloh's president, Gerard Thorez. *Id.* ¶ 46. According to the Complaint, Joffred discussed Lander's qualifications with Thorez, and Joffred

2

recommended Landers for the position. Thorez, however, allegedly stated to Joffred that he did not want to hire Landers "because of his military service." *Id.* ¶ 47. Joffred then allegedly informed Mr. Whittington of Thorez's decision and his reason for denying Landers the position. *Id.* ¶ 48. Mr. Whittington informed Landers of the company's decision not to hire him, and Landers subsequently filed suit against Vossloh—and others—in this court.[1] *Id.* ¶¶ 49, 56. The suit was settled in December 2014. *Id.* ¶ 66.

In April 2014, Mr. Whittington and Vossloh began negotiating the terms of his resignation, but negotiations broke down when Thorez required modifications to a drafted agreement. Compl. ¶¶ 50–52. Mr. Whittington sent Joffred his letter of resignation on June 16, 2014, declaring his resignation effective July 1, 2014. *Id.* ¶ 53. Among the reasons offered for his resignation, Mr. Whittington stated as follows:

> I felt I had found the perfect solution [for my replacement] in Jimmy Landers. He meets the criteria in all aspects of being capable of handling the position. He is of the age to serve [Vossloh] well for many years and being of military background, he is extremely disciplined and very personnel oriented. He is highly intelligent, very military-decorated . . . and is highly respected from the lowest to the highest rankings in the United States Military Forces. Ironically, the qualities instilled by the US Military are the very same reasons he was turned away by Vossloh.

*Id.* ¶ 54.

According to the Complaint, on July 15, 2014, attorneys for Vossloh contacted Mr. Whittington in writing and threatened him with civil suits should he disclose any

---

[1] The case was assigned civil action number 2:14-cv-23920.

3

of Vosshol's confidential, proprietary, or trade secret information. Compl. ¶ 58. Vosshol's attorneys also reminded Mr. Whittington of his previous rejection of a $50,000 "retirement gift" offer in exchange for executing a non-compete agreement. *Id.* According to the Complaint, Klotzer contacted Mr. Whittington on July 25, 2014, and threatened to terminate both his wife and son if he continued to work for a competitor and refuse to execute a non-compete agreement. *Id.* ¶ 59. That same day, Mr. Whittington signed a Separation Agreement [ECF No. 8-5].

The Separation Agreement included several key provisions: (1) Mr. Whittington agreed to be paid $50,000 for executing the agreement and abiding by its terms; (2) he agreed to not disclose Vossloh's confidential, proprietary, and trade secret information; (3) he agreed to not work for a competing company, consult for competing companies, or solicit Vossloh's customers or employees for a period of two years from the signing of the agreement; (4) he agreed to a broad release of claims and agreed not to sue Vossloh or its employees and agents; (5) he agreed to reimburse Vossloh should he initiate a suit for a claim otherwise released under the Separation Agreement; (6) he agreed that jurisdiction and venue regarding any underlying suit would lie with the federal and state courts of Pennsylvania; and (7) he agreed that terms of the Separation Agreement would be construed and enforced according to the laws of Pennsylvania. Separation Agreement 1–7. The Separation Agreement encouraged Mr. Whittington to consult with an attorney before executing the agreement and that he would have twenty-one days to decide whether to agree to its

4

terms. *Id.* at 8. The Separation Agreement further allowed Mr. Whittington seven days to revoke the agreement for any reason by notifying Vossloh in writing. *Id.*

The Complaint alleges that on July 30, 2014, five days after Mr. Whittington executed the Separation Agreement, Vossloh required Mrs. Whittington and James III to each execute a "Non-competition, Non-disclosure, Non-interference and Non-solicitation Agreement." Compl. ¶ 62. These agreements where to be effective for twelve months after their termination from Vossloh. *Id.*

The Complaint alleges that while Lander's suit was pending against Vossloh, all three plaintiffs "continued to provide assistance to Mr. Landers and his counsel that was prejudicial to [Vossloh]." Compl. ¶ 67. The plaintiffs allege that Vossloh, Joffred, and Klotzer knew the plaintiffs were assisting Landers with his civil case. *Id.* On January 28, 2015, Mrs. Whittington and James III were terminated. *Id.* ¶ 68.

Also on January 28, 2015, per the allegations, Klotzer handed Mrs. Whittington and James III a document stating that they "will receive information in the mail within 14 days of your benefits termination date of January 31st, 2015 on continuation under COBRA of any health care benefits in which you were enrolled. Your health benefits will end effective January 31st, 2015." Compl. ¶ 69. Mrs. Whittington alleges that she called Vossloh's third-party benefits coordinator to inquire about the status of her COBRA benefits, and she was informed that Vossloh did not notify the benefits coordinator of her termination. *Id.* ¶ 70. Mrs. Whittington and James III allege they received information regarding their COBRA benefits for

5

the first time on May 18, 2015. Mrs. Whittington and James III allege that "[f]rom the time of termination of employment on January 28, 2015 until receipt of the correspondence on May 18, 2015, [they] were without medical care benefits, and as a result, either refrained from seeking necessary medical treatment or incurred individual medical expenses." *Id.* ¶71.

Each of the three plaintiffs allege that he or she provided assistance to Landers in his action to enforce his rights under USERRA. Compl. ¶¶ 74, 78, 82. Likewise, each plaintiff alleges that he or she took an action to aid enforcement of USERRA protections against Vossloh on Landers's behalf. *Id.* The plaintiffs allege that "USERRA's protections extend not only to those in military service, but also to those who have taken action to enforce protections, have testified or otherwise made a statement in connection with proceedings under USERRA, or [have] assisted or otherwise participated in an investigation under USERRA" *Id.* ¶¶ 75, 79, 83.

Two of the plaintiffs, Mrs. Whittington and James III, allege violations of COBRA: namely, they allege that Vossloh was required to provide COBRA benefit information to them within fourteen days of their termination. Compl. ¶¶ 85, 90. Mrs. Whittington and James III seek a $110 per day penalty against Vossloh from the time they should have received benefit information until the time they actually received such information. In addition, Mrs. Whittington alleges she incurred $379.28 in medical expenses because of Vossloh's failure to timely provide her with benefit information. *Id.* ¶ 89.

Lastly, each plaintiff seeks a declaratory judgment to nullify and void their respective written agreements with Vossloh.

## II. Jurisdiction & Venue

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331–1332, 38 U.S.C. § 4323(b)(3), and 29 U.S.C. § 1132(e). Venue is proper because the defendants maintain a business location in Saint Albans, West Virginia, and the alleged acts or omissions occurred in the Southern District of West Virginia.

## III. Legal Standard

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim is one accompanied by facts allowing the court to draw the reasonable inference that the defendant is liable, facts moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## IV. Discussion

The defendants' Partial Motion to Dismiss requests dismissal of Counts I through III of the Complaint on the basis that these counts are barred as a matter of law. All three counts allege violations of USERRA: Count I is specific to Mr. Whittington, Count II is specific to Mrs. Whittington, and Count III is specific to James III. Additionally, the defendants seek dismissal of Counts IV through VIII to the extent those claims seek relief against defendants Joffred and Klotzer in their individual capacities. Last, the defendants seek an award of fees and costs incurred in obtaining dismissal of Count I.

### A. USERRA

USERRA was enacted to, among other things, "prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). USERRA's protections, however, apply to persons unaffiliated with the uniformed services:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. *The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.*

38 U.S.C. § 4311(b) (emphasis added). "An employer violates USERRA when an employee's protected action . . . is a motivating factor in the employer's adverse

8

employment action, unless the employer proves that the action would have been taken in the absence of the employee's protected conduct. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011). "[USERRA] is very similar to Title VII, which prohibits employment discrimination 'because of . . . race, color, religion, sex, or national origin.'" *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) (citing 42 U.S.C. §§ 2000e–2(a)).

### B. Count I

In Count I of the Complaint, Mr. Whittington alleges Vossloh discriminated against him based on "actions taken to aid enforcement of protections afforded under USERRA." Compl. ¶¶ 72–76. According to the Complaint, Mr. Whittington resigned from his position with Vossloh on July 1, 2014, and Mr. Whittington resigned because he was unhappy with Vossloh's discrimination against Landers. Compl. ¶ 7. The Complaint *does not allege* that the resignation was based on any of Vossloh's discriminatory or adverse employment actions against Mr. Whittington. Further, the Complaint does not allege that Vossloh discriminated or engaged in any other prohibited action under USERRA against Mr. Whittington while he was employed by Vossloh.

Importantly, Mr. Whittington signed the Separation Agreement with Vossloh on July 25, 2014—after he resigned from the company—wherein he released Vossloh from any claims stemming from his employment with the company. Although Mr. Whittington now challenges the legitimacy of the Separation Agreement, *see* Compl.

9

¶¶ 95–99, determining the legitimacy of the agreement is not necessary with regard to Mr. Whittington's USERRA claims. The plaintiffs state in their Response [ECF No. 17] that "[a]ll claims arose after the date of the Agreement and as such, Plaintiff James Wittington, Jr. did not release Defendants from claims for which he now seeks relief." Resp. 3.

It is clear from the statute that only "employers" are capable of violating USERRA. *See* 38 U.S.C. § 4311(a)–(b). Taking all of the facts alleged in the Complaint as true, it is evident that Mr. Whittington has failed to state a claim under USERRA because the alleged illegal conduct occurred *after* he was employed by Vossloh and *after* he entered into the alleged coercive Separation Agreement. Accordingly, Count I of the Complaint is **DISMISSED without prejudice**. Further, because Mr. Whittington's USERRA claims do not implicate the Separation Agreement's release provisions, the defendants' request for attorney's fees and costs stemming from its defense of Count I is **DENIED**.

### C. Counts II and III.

The defendants next argue that Mrs. Whittington's and her son's USERRA claims should be dismissed because they have not engaged in conduct protected by the Act—specifically conduct protected pursuant to 38 U.S.C. § 4311(b). According to the Complaint, "[a]ll plaintiffs provided assistance, including, but not limited to, assistance as fact witnesses [to Landers] in an action seeking to enforce his rights under USERRA." Compl. ¶ 5. The plaintiffs allege that the defendants became aware

10

of their "assistance" to Landers in July 2014, and Mrs. Whittington and James III were allegedly required to sign a non-compete agreement as a condition of their continued employment. Compl. ¶¶ 6, 14. During negotiations leading up to Landers's ultimate settlement of his USERRA suit, the plaintiffs allege they continued to provide assistance to Landers and his counsel that was prejudicial to the defendants. Compl. ¶ 67. The plainitffs allege that the defendants knew that the plaintiffs continued to assist Landers until the ultimate settlement of Landers's suit. *Id.* The plaintiffs allege the defendants willfully and wrongfully discriminated against them in violation of USERRA by requiring them to sign a non-compete agreement, ultimately terminating them, and denying them COBRA benefits because of the assistance they provided to Landers. Compl. ¶¶ 80, 84.

Mrs. Whittington and James III have sufficiently plead a violation of USERRA in Counts II–III of the Complaint. These plaintiffs allege that they "provided assistance" to Landers to enforce his rights under USERRA. The plaintiffs explain that they offered themselves as fact witnesses and made statements to Landers's counsel in preparation for Landers's own USERRA suit against the defendants. At the very least, the plaintiffs have alleged enough facts to plausibly establish a claim that they were subject to improper discrimination because they took "an action to enforce a protection afforded any person" under USERRA and "otherwise made a statement in or in connection with any proceeding under" the Act. *See* 38 U.S.C. § 4331(b). The defendants' Motion as to Counts II and III is **DENIED**.

### D. Counts IV and V

The defendants next assert that Joffred and Klotzer cannot be held personally liable for alleged violations of COBRA, and thus the plaintiffs' claims as to both of them must be dismissed. The plaintiffs argue that Joffred and Klotzer fall within the definition of "employer" under the Employee Retirement Income Security Act ("ERISA") and acted "indirectly in the interest of" Vossloh. Resp. 11.

"'Employer' is defined in ERISA, and the definition applies to the entire subchapter, which includes COBRA." *McDowell v. Krawchison*, 125 F.3d 954, 961 (6th Cir. 1997) (citing 29 U.S.C. § 1002). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5).

Despite the seemingly broad definition of "employer," courts have ruled that Congress did not intend to allow individual corporate officers to be held personally liable under ERISA. *See McDowell*, 125 F.3d at 962 ("A broader interpretation might allow a court to hold an individual employee who merely processes health insurance questions and paperwork personally liable for a plaintiff's medical costs under COBRA; Congress most likely did not intend such a result."); *see also Int.'l Bhd. of Painters & Allied Trade Union v. George A. Kracher, Inc.*, 856 F.2d 1546, 1550 (D.C. Cir. 1988) (discussing that if Congress had decided to alter traditional limited liability principles, it would have signaled its resolve somehow in ERISA's legislative history.)

"[C]orporate officers cannot be held personally liable under ERISA where there is no basis for piercing the corporate veil." *Rockney v. Blohorn*, 877 F.2d 637, 643 (8th Cir. 1996); *see also Madonia v. Blue Cross & Blue Shield of Va.*, 11 F.3d 444, 450 (4th Cir. 1993) (recognizing that the corporate veil would shield a corporate officer from individual liability under ERISA).

The plaintiffs have not alleged any facts to justify piercing the corporate veil in order to maintain a claim against both Joffred and Klotzer under COBRA. The court **FINDS** that Joffred and Klotzer are not "employers" as defined by ERISA. Accordingly, to the extent they allege claims against Joffred and Klotzer, Counts IV and V of the plaintiffs' Complaint are **DISMISSED without prejudice**.

### E. Counts VI through VIII

Counts VI through VIII of the Complaint request a declaratory judgement that each of the three plaintiffs' respective written agreements with Vossloh are null and void and that the defendants must pay the costs and attorney's fees for this suit. The defendants argue that these Counts should be dismissed as to Joffred and Klotzer on the grounds that neither Joffred nor Klotzer are parties to the agreements. The defendants state that "[n]o allegations suggest that either signed in a capacity other than as a representative of [Vossloh]." Mem. Supp. Partial Mot. Dismiss 12. The court agrees.

Throughout the Complaint, the plaintiffs refer to Joffred and Klotzer as "agents and representatives" of Vossloh. *E.g.*, Compl. ¶¶ 55, 59, 61. The Complaint

13

clearly states that it was Vossloh that allegedly coerced the plaintiffs to sign their respective agreements. *See* Compl. ¶¶ 12, 62–63. Further, the agreements themselves, which were incorporated into the Complaint through attached exhibits, demonstrate that Joffred and Klotzer signed the agreements purely as Vossloh's representatives.[2] *See* Compl. Exs. 4–6. I **FIND** that, as to Counts VI through VIII, the plaintiffs have failed to state a claim against Joffred and Klotzer because neither Joffred nor Klotzer are parties to the agreements. Accordingly, to the extent they allege claims against Joffred and Klotzer, Counts VI through VIII the plaintiffs' Complaint are **DISMISSED without prejudice**.

V. Conclusion

For the reasons given above, the defendants' Partial Motion to Dismiss and Request for Fees [ECF No. 9] is **GRANTED in part** and **DENIED in part**. Count I of the Complaint is **DISMISSED without prejudice**. The defendants' Motion regarding Counts II and III is **DENIED**. Counts IV through VIII are **DISMISSED without prejudice** to the extent those Counts allege claims against Michael A. Joffred and Jason Klotzer in their individual capacities. The defendants' Motion regarding their request for attorney's fees and costs for defending against Count I is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

---

[2] Klotzer signed Mr. Whittington's Separation Agreement, and Joffred signed Mrs. Whittington's and James III's non-compete agreements.

14

ENTER: June 21, 2016

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE